UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD THOMAS WALSH,

           Plaintiff,                     Case No. 15-cv-14071
                                                  Hon. Mark A. Goldsmith

vs.

EDWARD JAGST, et al.,

           Defendants.

_____/

**OPINION AND ORDER GRANTING IN PART AND DENYING IN PART**
**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Dkt. 20) AND DENYING**
**DEFNEDANTS' MOTION FOR SANCTIONS (Dkt. 21)**

Plaintiff's civil rights claim, brought under 42 U.S.C. § 1983, alleges that Defendants, who are police officers with the City of Canton Police Department, violated his Fourth and Fourteenth Amendment Rights after they responded to a series of 911 calls placed from Plaintiff's residence. The complaint also alleges conspiracy and concert-of-action claims brought under Michigan state law. Defendants filed a motion for summary judgment (Dkt. 20), together with a motion for sanctions (Dkt. 21), on May 6, 2016. The Court held a hearing on the motion on June 30, 2016. For the reasons set forth below, Defendants' motion for summary judgment is granted in part and denied in part, and Defendants' motion for sanctions is denied.

**I. BACKGROUND**

The Canton Police Department, including at least some of Defendants, have an extensive history with Plaintiff. See Def. Br. at 1-2 (identifying over 60 incidents involving Plaintiff); see also Pl. Dep. at 39:13-25, Ex. 1 to Defs. Mot. (Dkt. 20-2) (conceding that several incidents did occur). On January 9, 2013, Defendants responded to Plaintiff's home after the Canton Police

dispatcher received a series of 911 calls — thirty-three in all — from Plaintiff's home.  Def. Br. at 1 (Dkt. 20).  When Defendants arrived at the home, the doors were locked, the lights were off, and Defendants were unable to see movement inside.  Id. at 3; Pl. Resp. at 2-3 (Dkt. 23).  No one responded to the doorbell.  Def. Mot. at 3.  Defendant Jagst then climbed through an unlocked window, unlocked Plaintiff's door from the inside, and permitted the other officers to enter Plaintiff's home.  Id.  The police report, which was attached to the complaint, states that Defendants announced their police presence both during and after their entry into the home.  See 1/9/2013 Police Report, Compl. at 18 (cm/ecf page).  After entering the home, Defendants came upon the Plaintiff in a hallway, and Plaintiff repeatedly commanded them to leave.  Id.; Pl. Resp. at 3.

At this point, the parties' versions of the facts diverge.  Defendants claim that Plaintiff produced a tall glass containing a yellow liquid — "believed to be urine" — which he threw at Defendants before advancing on them "in an aggressive manner."  Def. Br. at 3-4.  Defendants executed affidavits in support of this factual account.  See Exs. 2-5, Def. Reply (Dkts. 26-3 to 26-6).  Plaintiff flatly denies throwing any object at Defendants or approaching them in a threatening way.  See Pl. Resp. at 3.  Plaintiff executed an affidavit in support of his version of the facts.  See Ex. D to Pl. Resp. at 3 (Dkt. 24-5).

It is undisputed that Defendants shot Plaintiff with their tasers three times after Plaintiff appeared in the hallway.  Def. Br. at 4; Pl. Resp. at 3.  Defendants claim that this only occurred after Plaintiff approached them, ignoring their commands to stop and get on the ground.  Def. Br. at 4.  Plaintiff claims that the tasing was unprovoked.  Compl. ¶ 16 (Dkt. 1-1).  He says he never walked toward the officers in a threatening manner, nor did Defendants repeatedly command him to stay put.  Pl. Resp. at 3.  Plaintiff also had injuries to his head; Defendants claim that the injuries

resulted when their tasers caused Plaintiff to fall down.  Def. Br. at 4.  Plaintiff claims that Defendants caused the injuries by striking him in the head.  Compl. ¶ 17.

Finally, Defendants allege that Plaintiff actively resisted arrest.  Def. Br. at 9.  Specifically, after being handcuffed on the floor, Defendants allege that Plaintiff tried to get up and kicked Defendant Jagst in the shin.  Id.  Plaintiff does not specifically contest this factual assertion, but he does argue that he would have been "privileged" to use force to resist unlawful police conduct.  See Pl. Br. at 2-3 (asserting that throwing object at police, if it occurred, would have been privileged due to warrantless entry).

## II.  STANDARD OF DECISION

A court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  When a defendant seeks summary judgment, the defendant "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "[T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 257 (1986).  A mere scintilla of evidence is insufficient; rather, "there must be evidence on which the jury could reasonably find for the [nonmovant]."  Id. at 252.

The following standard applies when evaluating the evidence on a motion for summary judgment:

> [C]redibility judgments and weighing of the evidence are prohibited.  Rather, the evidence should be viewed in the light most favorable to the non-moving party. . . .  Thus, the facts and any inferences that can be drawn from those facts must be viewed in the

light most favorable to the non-moving party.

Biegas v. Quickway Carriers, Inc., 573 F.3d 365, 373 (6th Cir. 2009) (brackets and citations omitted).

### III.  ANALYSIS

#### A.  Defendants' Motion for Summary Judgment

##### 1.  The Warrantless Entry

Defendants first argue that they enjoy qualified immunity from Plaintiff's claims because they entered Plaintiff's home under the "exigent circumstances" exception to the warrant requirement.  One type of exigency justifying warrantless entry is known as the "emergency aid exception."  Under that exception, "law enforcement officers may enter a home without a warrant to render emergency assistance to an injured occupant or to protect an occupant from imminent injury."  Michigan v. Fisher, 558 U.S. 45, 47 (2009).  The exception "does not depend on the officers' subjective intent or the seriousness of any crime they are investigating when the emergency arises."  Id.  Rather, "[i]t requires only an objectively reasonable basis for believing that a person within [the house] is in need of immediate aid."  Id.

It is on this basis that Defendants invoke qualified immunity.  In their motion for summary judgment, they merely alleged that Plaintiff's 911 calls "raised a concern regarding the safety of Plaintiff or other possible occupants of Plaintiff's home."  Def. Br. at 7.  In their reply, Defendants more forcefully argue that the undisputed facts show an objectively reasonable belief that Plaintiff was in need of immediate assistance, which justified their entry into the home.  See Def. Reply at 3.

"The doctrine of qualified immunity protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional

4

rights of which a reasonable person would have known.  Pearson v. Callahan, 555 U.S. 223, 231 (2009).  Application of the doctrine entails two inquiries:  "First, the court must determine whether, based upon the applicable law, the facts viewed in the light most favorable to the plaintiff[ ] show that a constitutional violation has occurred."  Burchett v. Kiefer, 310 F.3d 937, 942 (6th Cir. 2002).  Next, "[i]f the court finds a constitutional violation, it must then consider whether the violation involves clearly established constitutional rights of which a reasonable person would have known."  Id.

Here, the Court declines to conclude whether a constitutional violation occurred; no Supreme Court or Sixth Circuit case law is on point.  It is true that 911 hang-up calls — in tandem with other factors — have been held to be a basis for invoking the emergency aid exception.  In Johnson v. City of Memphis, on which Defendants chiefly rely, the Sixth Circuit stated:

> 911 hang-ups inform the police that someone physically dialed 911, the dedicated emergency number, and either hung up or was disconnected before he or she could speak to the operator. An unanswered return call gives further information pointing to a probability, perhaps a high probability, that after the initial call was placed the caller or the phone has somehow been incapacitated. In some percentage of cases involving this set of facts, a person is in need of emergency assistance. Because the "ultimate touchstone" of the Fourth Amendment is reasonableness, certainty is not required.

Johnson v. City of Memphis, 617 F.3d 864, 871 (6th Cir. 2010).  Summarizing its holding, Johnson stated that "the combination of a 911 hang call [i.e., a hang-up call], an unanswered return call, and an open door with no response from within the residence is sufficient to satisfy the exigency requirement."  Id. at 869 (emphasis added).

Neither Johnson's rationale nor its holding aligns entirely with the facts here. First, the door in Johnson was "wide open," 617 F.3d at 866, while Plaintiff's door was closed and locked. More importantly, the inference of incapacitation is not present.  Defendants concede that the

dispatcher was unable to complete any return calls because "another 911 call from Plaintiff's number was incoming" during each attempt. Def. Br. at 3. This does not "point[ ] to a probability, perhaps a high probability, that after the initial call as placed the caller or the phone has somehow been incapacitated," Johnson, 617 F.3d at 871. But just as Plaintiff's repeated calls to 911 belie a claim that he was "incapacitated," the calls could support an objectively reasonable belief that he was under some other form of duress.

The Court has found no case in which a high volume of 911 hang-up calls justified a warrantless entry into a home under the emergency aid exception. Nor do Defendants point one out. Other cases, in which a 911 call culminates in a warrantless entry into a home, consistently have some intervening occurrence that tends to corroborate a belief that an emergency existed. See, e.g., Michigan v. Fisher, 558 U.S. 45 (2009) (entry valid where responders found home in "chaos," blood smeared on vehicles, occupants screaming and throwing objects at each other, and occupants bleeding); Johnson, 617 F.3d at 869; Hameed v. City of Dearborn, No. 11-15193, 2012 WL 3758083, at *4 (E.D. Mich. Aug. 30, 2012) (warrantless entry valid where anonymous 911 call, reporting domestic violence against a child, was corroborated, in part, when police arrived to hear crying child through door); see also United States v. Cohen, 481 F.3d 896, 899 (6th Cir. 2007) ("We believe that the 911 hang-up call, standing alone without follow-up calls by a dispatcher or other information, is most analogous to an anonymous tip. The Supreme Court has noted that 'there are situations in which an anonymous tip, suitably corroborated, exhibits sufficient indicia of reliability to provide reasonable suspicion to make the investigatory stop.'" (quoting Florida v. J.L., 529 U.S. 266, 270 (2000))); accord United States v. Smith, 594 F.3d 530, 540 (6th Cir. 2010) (investigatory stop justified by 911 call in which caller did not speak, but dispatcher heard a struggle, and where suspect attempted to evade police officers).

6

On the other hand, none of these cases presents the staggering volume of 911 calls present here. It is easy to conceive of scenarios in which thirty-three 911 calls — even when the caller remains silent — are caused by a dire emergency. Nor do these cases account for anything like Defendants' long history with Plaintiff — which Defendants assert, and Plaintiff does not contest, was considered during this incident. See Defs. Ans. to Pl. Interrogatories at 3, Ex. C to Pl. Resp. (Dkt. 23-4). That history suggests an ongoing, potential need for emergency aid;[1] and with that history as a backdrop, thirty-three 911 calls support an inference that the potential need for emergency assistance had ripened into an acute, immediate need for aid. Accordingly, the Court cannot firmly conclude that Defendants violated the Fourth Amendment when they responded to Plaintiff's thirty-three 911 calls and entered the home. Both of these facts suggest that Defendants had an objectively reasonable belief that an occupant of Plaintiff's home was in need of emergency assistance.

However, even if the Court did conclude that Defendants violated Plaintiff's constitutional right, Defendants would still be entitled to qualified immunity. Government officials, such as Defendants, only lose their qualified immunity when they violate a right that was "clearly established" at the time of their action. Pearson, 555 U.S. at 231. And "courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." Reichle v. Howards, 132 S. Ct. 2088, 2093 (2012).

---

[1] To choose one representative example: in 2009, Plaintiff called 911 forty times, which, after the Canton Police Department responded and observed a state of extreme squalor in the home, led to Plaintiff's hospitalization for psychiatric evaluation. See Def. Br. at 1; Ex. 3 to Def. Br. (Dkt. 20-4).

A right is clearly established when "[t]he contours of the right [are] sufficiently clear that a reasonable official would understand that what he is doing violates that right." Anderson v. Creighton, 483 U.S. 635, 640 (1987). "A right is not considered clearly established unless it has been authoritatively decided by the United States Supreme Court, the Court of Appeals, or the highest court of the state in which the alleged constitutional violation occurred." Durham v. Nu'Man, 97 F.3d 862, 866 (6th Cir. 1996). Absent controlling authority, a right is clearly established only through a robust consensus of cases of persuasive authority. See Ashcroft v. al-Kidd, 563 U.S. 731, 742 (2011). The Supreme Court "do[es] not require a case directly on point, but existing precedent must have placed the . . . constitutional question beyond debate." Id. at 741 (emphasis added). Stated differently, precedent "must both point unmistakably to the unconstitutionality of the conduct complained of and be so clearly foreshadowed by applicable direct authority as to leave no doubt in the mind of a reasonable officer that his conduct, if challenged on constitutional grounds, would be found wanting." Ohio Civil Serv. Emps. Ass'n v. Seiter, 858 F.2d 1171, 1177 (6th Cir. 1988) (emphasis added). This prong of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments about open legal questions," and "protects all but the plainly incompetent or those who knowingly violate the law." Ashcroft, 563 U.S. at 743.

Plaintiff has not shown that the Supreme Court, the Sixth Circuit, the Michigan Supreme Court, or a "robust consensus of cases of persuasive authority" have tackled anything resembling the present factual milieu. Simply put, it has not been held that a high volume of 911 calls, combined with some law enforcement history with the occupant, justifies — or does not justify — warrantless entry into a home that is dark and locked up. Accordingly, the right asserted by

Plaintiff is not "clearly established," and Defendants enjoy qualified immunity for the warrantless entry.

Plaintiff attempts to parry this conclusion by stating the obvious fact that the right to be free from an unexcused warrantless entry by the police is "clearly established." But, as the Supreme Court has discussed, this argument focuses on the wrong "level of generality":

> For example, the right to due process of law is quite clearly established by the Due Process Clause, and thus there is a sense in which any action that violates that Clause (no matter how unclear it may be that the particular action is a violation) violates a clearly established right. But if the test of "clearly established law" were to be applied at this level of generality, it would bear no relationship to the "objective legal reasonableness" that is the touchstone of Harlow.[2]  Plaintiffs would be able to convert the rule of qualified immunity that our cases plainly establish into a rule of virtually unqualified liability simply by alleging violation of extremely abstract rights.

Anderson, 483 U.S. at 639. "This is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful; but it is to say that in the light of pre-existing law the unlawfulness must be apparent." Id. at 640. As discussed above, based upon the undisputed facts, the unlawfulness of Defendants' warrantless entry is not apparent.

Finally, Plaintiff argues that "whether a search of a home was justified without a warrant presents a question of fact for the jury to decide." Pl. Resp. at 17 (citing Logsdon v. Hains, 492 F.3d 334, 341 (6th Cir. 2007); Radvansky v. City of Olmsted Falls, 395 F.3d 291, 302 (6th Cir. 2005)). He claims that a fact question precludes summary judgment, because there is a lack of

---

[2] In Harlow v. Fitzgerald, 457 U.S. 800, 819 (1982), the Supreme Court explained the "clearly established right" prong as "a test that focuses on the objective legal reasonableness of an official's acts."

evidence that he needed emergency attention.   In support, Plaintiff recites the following allegations:

> Defendants lack objective facts to contend that the emergency aid doctrine applies for Defendants to behave as they did. No caller spoke to the 911 dispatcher during the 911 calls to request emergency help or to threaten imminent violence, . . .  [and] Plaintiff's home was quiet, dark, and locked up — except for the window by which Defendants made their unlawful entry.

Id. at 17-18.

But the defense concedes all of these facts, and the Court has taken them as true in deciding the motion.  Only when the legal question of qualified immunity "turns upon which version of the facts one accepts, the jury, not the judge, must determine liability."  Sova v. City of Mt. Pleasant, 142 F.3d 898, 903 (6th Cir. 1998).  Otherwise, "what constitutes a clearly established right" is a "purely legal question."   Hoover v. Radabaugh, 307 F.3d 460, 468 (6th Cir. 2002).   As the foregoing analysis shows, the Court decided this portion of Defendants' summary judgment motion using only the undisputed facts.

Because no genuine issue of material fact exists, the resolution of which could deny Defendants qualified immunity for their warrantless entry of Plaintiff's home, Defendants' motion for summary judgment on this issue is granted.

### 2. The Excessive Force Claims

Plaintiff's other Fourth Amendment claim is distinct from the warrantless entry, as it concerns events that took place after the police had entered the home.   Plaintiff alleges that Defendants tased, beat, and arrested him for no reason.  Pl. Resp. at 3.  Defendants allege that they tased Plaintiff because he threw an object and advanced on their position; they also deny beating him whatsoever.  Def. Br. at 3-4.  Both sides submitted affidavits in support of their versions of the operative facts.

A recent Sixth Circuit case, Gradisher v. City of Akron, 794 F.3d 574, 584 (6th Cir. 2015), is dispositive. There, the parties "dispute[d] whether or not [the § 1983 plaintiff] was resisting or refusing to be handcuffed" when he was tased. Id. at 585-586. The officers claimed that he was resisting; the plaintiff, "conversely," claimed that he did not resist. Again, "[w]here, as here, the legal question of qualified immunity turns upon which version of the facts one accepts, the jury, not the judge, must determine liability." Id. at 586 (quoting Sova, 142 F.3d at 903) (reversing district court's grant of summary judgment).

The facts and reasoning of Gradisher are controlling here. Due to an outstanding dispute as to the material facts surrounding Plaintiff's "excessive force" claims, summary judgment is denied on this issue.

### 3. Governmental Immunity

In addition to the claims brought directly under § 1983, Plaintiff also alleges civil conspiracy and concert-of-action under Michigan state law (Counts III, IV). Defendants direct their governmental immunity defense only to these two counts. See Def. Br. at 11.

Defendants argue that Plaintiff's claims of civil conspiracy and concert of action are not, by themselves, legitimate causes of action; they require him to first establish a separate, actionable tort. Id. at 12 (citing Urbin v. Beierling, 835 N.W.2d 455, 463-464 (Mich. Ct. App. 2013)). This Plaintiff cannot do, claim Defendants, because they are entitled to governmental immunity from intentional and negligent tort liability on the underlying torts. Id. ("Plaintiff has not alleged and cannot establish a separate, actionable tort because Defendants are entitled to governmental immunity from intentional and negligent tort liability."). If they are immune from the underlying tort, then they cannot be liable for the associated conspiracy and concert-of-action charges under

Michigan law.  Defendants then proceed to argue that they are immune from both negligent and intentional torts under Michigan governmental immunity law.  See Def. Br. at 12-18.

It is true that Michigan requires an underlying tort in order to bring conspiracy and concert-of-action claims.  See Urbain, 835 N.W.2d at 463-464 ("Both claims . . . require a separate tort before liability can attach.").  For this reason, Defendants' motion is granted to the extent that Plaintiff's conspiracy and concert-of-action claims are premised upon the warrantless entry, because Defendants enjoy qualified immunity for that entry.

Under § 1983, however, there remains the possibility of underlying tort liability for the excessive force claims.  Plaintiff's complaint alleges that "Defendants acted tortuously by violating Plaintiff's right to be free from unreasonable searches and seizures."  Compl. ¶ 32; see also id. ¶ 38.  And, as stated by the Supreme Court, § 1983 claims sound in tort:

> "[T]here can be no doubt that claims brought pursuant to § 1983 sound in tort. Just as common-law tort actions provide redress for interference with protected personal or property interests, § 1983 provides relief for invasions of rights protected under federal law. Recognizing the essential character of the statute, we have repeatedly noted that 42 U.S.C. § 1983 creates a species of tort liability.

City of Monterey v. Del Monte Dunes at Monterey, Ltd., 526 U.S. 687, 709 (1999).

Given that § 1983 forms the basis for Plaintiff's common-law claims of conspiracy and concert-of-action, Defendants' appeals to state-law governmental immunity doctrines are unavailing.  "Conduct by persons acting under color of state law which is wrongful under 42 U.S.C. § 1983 . . . cannot be immunized by state law."  Martinez v. California, 444 U.S. 277, 284 n.8 (1980); see also Good v. Dauphin Cnty. Soc. Servs. for Children & Youth, 891 F.2d 1087, 1090-1091 (3d Cir. 1989) ("[A state] immunity statute . . . has no force when applied to suits under the Civil Rights Acts. The supremacy clause of the Constitution prevents a state from immunizing

12

entities or individuals alleged to have violated federal law."); <u>Walker v. City of Detroit</u>, No. 10-13179, 2010 WL 5249835, at *4-*5 (Oct. 25, 2010).

Because state-law immunity doctrines cannot insulate a defendant from a violation of § 1983, Defendants' motion for summary judgment is denied on this issue.

### B.  Defendants' Motion for Sanctions

Defendants filed a motion for sanctions pursuant to Federal Rule of Civil Procedure 11 (Dkt. 21).  The motion claims that Plaintiff's claims are not warranted by existing law and lack evidentiary support, in violation of Rule 11(b).  <u>See</u> Def. Mot. for Sanctions at 3.

In pertinent part, Rule 11 states:

> (b) Representations to the Court. By presenting to the court a pleading, written motion, or other paper — whether by signing, filing, submitting, or later advocating it — an attorney or unrepresented party certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances:
>
> > (1) it is not being presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation;
> >
> > (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law;
> >
> > (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and
> >
> > (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information.

Fed. R. Civ. P. 11(b).

None of Plaintiff's filings warrants sanctions. Regarding the warrantless entry claim, the issue whether Defendants' conduct violated the Fourth Amendment is, for the reasons explained above, arguably unsettled. A party that argues one side of an unsettled issue, even if ultimately unsuccessful, does not violate Rule 11(b). See, e.g., Oaklstone Comm. Sch. v. Williams, 615 F. App'x 284, 288-289 (6th Cir. 2015). And Plaintiff's excessive force, concert-of-action, and conspiracy claims survived Defendants' motion for summary judgment. Defendants' motion for sanctions on these claims is, at best, premature. See Lemaster v. United States, 891 F.2d 115, 121 (6th Cir. 1989) ("[M]ere survival of a summary judgment motion, in which all facts are construed in the non-movant's favor, does not insulate the party from sanctions if it is later determined that all factual claims were groundless." (emphasis added)). Given that there appears to be, at this point, a genuine dispute of material fact, sanctions are not appropriate at this time.

## IV.  CONCLUSION

For the reasons set forth above, Defendants' motion for summary judgment is granted with respect to Plaintiff's warrantless entry claim and the conspiracy and concert-of-action claims based upon the warrantless entry. Defendants' motion for summary judgment is denied in all other respects. Defendants' motion for sanctions is denied.

SO ORDERED.

Dated:  July 26, 2016                         s/Mark A. Goldsmith
        Detroit, Michigan                     MARK A. GOLDSMITH
                                              United States District Judge

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on July 26, 2016.

                                              s/Karri Sandusky
                                              Case Manager