UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

EDWARD THOMAS WALSH,

    Plaintiff,

vs.

EDWARD JAGST, et al.,

    Defendants.
_____/

Case No. 15-cv-14071
Hon. Mark A. Goldsmith

**OPINION & ORDER
DENYING WITH PREJUDICE DEFENDANTS' MOTION IN LIMINE TO ALLOW
THE TESTIMONY AND/OR REPORT OF DR. CHARLES STERN (Dkt. 39), DENYING
WITH PREJUDICE DEFENDANTS' MOTION TO ADD DR. STERN AS A WITNESS
(Dkt. 61), AND DENYING WITHOUT PREJUDICE DEFENDANTS' MOTION IN
LIMINE TO ALLOW ALL EVIDENCE OF PLAINTIFF'S POLICE ENCOUNTERS
(Dkt. 40)**

This is a civil rights action brought by Plaintiff Edward Walsh pursuant to 42 U.S.C. § 1983, alleging violations of his rights under the Fourth and Fourteenth Amendments. Walsh seeks to recover for non-economic, emotional damages in connection with an encounter with Canton Police officers in his home on January 9, 2013. See Compl. ¶¶ 16-20 (Dkt. 1-1). Defendants are four Canton police officers, who responded to Walsh's 911 calls on the date in question. Id. ¶¶ 4-7. It is uncontested that Walsh suffered from a mental illness at the time of the encounter.

Pending before this Court are two motions in limine filed by Defendants. In the first motion, Defendants seek a ruling that the testimony of Dr. Charles Stern, who has treated Walsh for his mental health issues in the past, may be admitted at trial (Dkt. 39). Following Defendants' challenge to Walsh's competency to prosecute his case (Dkt. 48), Dr. Stern prepared a medical

1

report ostensibly bearing upon the issue of Walsh's competency (Dkt. 55-2). The parties filed supplemental briefs on the issue whether this report could be admitted at trial (Dkts. 58, 59).

In the second motion in limine, Defendants seek a ruling that "all evidence" of Walsh's encounters with police, including police reports and including evidence both before and after the January 9, 2013 incident, may be admitted at trial (Dkt. 40).

A hearing on these motions was held on August 15, 2017. For the reasons that follow, both motions are denied.

### I. Motion to Admit Testimony and/or Report of Dr. Charles Stern

Defendants' motion in limine establishes that a plaintiff may waive his psychotherapist-patient privilege by putting his mental condition at issue through a claim for mental-anguish damages. It follows, according to Defendants, that Walsh — having placed his mental condition at issue with respect to damages — has waived the privilege, permitting Dr. Stern to testify.

Walsh does not dispute Defendants' legal premise; instead, he points out that Defendants stipulated to remove Dr. Stern from their witness list on October 7, 2016. See 10/7/2016 Stip. Order (Dkt. 38). At the hearing on the motion, Defendants' counsel could not explain why he had stipulated to striking Dr. Stern's name from the witness list. Nor have Defendants established good cause in their post-hearing motion for leave to amend the witness list (Dkt. 61) to add Dr. Stern now — on the eve of trial — when his role and identity were known to them approximately ten months ago. More fundamentally, they do not even explain how Dr. Stern's testimony would bear upon damages — the original justification offered — and therefore they fail to carry their basic burden to establish the basic threshold requirement of relevance under Federal Rule of Evidence 401.

Defendants offer a clearer picture of why they want to offer Dr. Stern's report, as opposed to his testimony: it attacks Walsh's credibility. See Defs. Supp. Br. at 3. Admission of the report (or the testimony, for that matter) is not permissible for this purpose, at least in the instant context.

As an initial matter, "the credibility of witnesses is generally not an appropriate subject for expert testimony." United States v. Hill, 749 F.3d 1250, 1258 (10th Cir. 2014) (emphasis added); see also id. at 1260 (surveying case law and concluding that "our sibling circuits that have considered this issue have uniformly agreed").

Defendants seek to admit Dr. Stern's report through Federal Rule of Evidence 608. See id.[1] Rule 608 provides, in part, that "[a] witness's credibility may be attacked or supported by testimony about the witness's reputation for having a character for truthfulness or untruthfulness, or by testimony in the form of an opinion about that character." It is not limited to experts or non-experts.

Even if Rule 608 may be used to admit a witness's relevant, expertise-based testimony regarding another witness's character for truthfulness, it may not be used to "address[ ] the specific believability and truthfulness of [the accuser]'s story." See United States v. Azure, 801 F.2d 336, 8th Cir. 1986). Yet, that is exactly what Dr. Stern's report does. Dr. Stern's conclusion is as follows:

> It is my opinion that Mr. Walsh's statements and accusations toward . . . the police . . . make him a totally unreliable accuser. He will make any statement and behave in any manner that he believes will prevent him from taking responsibility for his actions. . . . Specifically, in relation to his charges against the police, given his

---

[1] Defendants also invoke Rules 607 and 609, but these are not relevant to the admission of Dr. Stern's report. Rule 607 merely sets forth the general rule that any party may attack the credibility of a witness. Rule 609 governs impeachment by evidence of a criminal conviction. Dr. Stern's report recounts several of Walsh's encounters with law enforcement, see Stern Rep. at 4-6, but the report does not reference convictions.

3

> mental illness, his antisocial personality, and his alcohol dependence, <u>it is clear to me that his accusations cannot be believed</u>.

Stern Rep. at 7 (emphasis added). This goes much further than addressing Walsh's character for truthfulness. It impermissibly concludes that Walsh is lying in support of this very lawsuit (and that he will lie in every instance that is to his benefit, without exception), which alone is enough to deny admissibility under Federal Rule of Evidence 608. The fact that Defendants are using an expert to do this only compounds the problem, as it likely will confuse the jury, who act as the exclusive "lie detector[s] in the courtroom," <u>United States v. Barnard</u>, 490 F.2d 907 (9th Cir. 1973), <u>cert. denied</u>, 416 U.S. 959 (1974). Such confusion substantially outweighs any marginal probative value. <u>See</u> Fed. R. Evid. 403. Further, the report is replete with specific acts by Walsh, constituting "specific instances of conduct," which are not allowed into evidence in a proponent's case-in-chief (although inquiry is permitted on cross-examination). <u>See</u> Fed. R. Evid. 608(b).

Another roadblock to admission is the hearsay nature of the report. <u>Sigler v. Am. Honda Motor Co.</u>, 532 F.3d 469, 480-481 (6th Cir. 2008) (expert report is hearsay because it is an unsworn statement offered for its truth). Although Defendants invoke exceptions for present-sense impressions, Fed. R. Evid. 803(1), and business records, Fed. R. Evid. 803(6), neither applies.

The report is not a present-sense impression because it was completed "at the end of May 2017," Defs. Mot. for Leave to File Supp. Br. ¶ 8 (Dkt. 55) – long post-dating Dr. Stern's last visit with Walsh on May 5. <u>See</u> Stern Rep. at 1. "The exception for present sense impression permits the introduction into evidence of a 'statement describing or explaining an event or condition made while the declarant was perceiving the event or condition, or immediately thereafter.'" <u>United States v. Price</u>, 58 F. App'x 105, 106 (6th Cir. 2003) (quoting Fed. R. Evid. 803(1)). Stern's report is far too removed from his examination of Walsh to qualify for this exception.

Nor is the report a business record admissible under Rule 803(6). Business records are properly admitted under the business records exception to the hearsay rule if they satisfy four requirements:

> (1) they must have been made in the course of regularly conducted business activities; (2) they must have been kept in the regular course of business; (3) the regular practice of that business must have been to have made the memorandum; and (4) the memorandum must have been made by a person with knowledge of the transaction or from information transmitted by a person with knowledge.

<u>Cobbins v. Tenn. Dep't of Transp.</u>, 566 F.3d 582, 588 (6th Cir. 2009).

Defendants argue that the <u>diagnoses contained within</u> the report are business records, and that physicians regularly prepare such reports (presumably for use in litigation). But courts do not admit written reports setting forth expert opinions when they are specifically prepared for litigation purposes. See <u>Jordan v. Binns</u>, 712 F.3d 1123, 1135 (7th Cir. 2013) (hearsay nature of adjuster's report not saved by business records exception because "[it] is well established . . . that documents prepared in anticipation of litigation are not admissible under FRE 803(6).").

Because neither his testimony nor his report is admissible, Defendants' motion to amend their witness list to include Dr. Stern (Dkt. 61), their motion to admit his testimony (Dkt. 39), and their request to admit his report are denied.

**II. Motion to Admit Evidence of Police Encounters**

Defendants argue that the evidence of Walsh's encounters with Defendants bears upon the reasonableness of Defendants' conduct. Specifically, at the hearing, defense counsel took the position that Walsh's repeated run-ins with police tended to prove that Defendants did not <u>conspire</u> to violate his constitutional rights. Defendants were unable to explain how a pattern of encounters with law enforcement makes it less likely that they conspired to violate Walsh's constitutional rights in this case.

The Court denies the motion without prejudice. The defense theory of the case is that Walsh advanced upon them in a menacing way on the night in question. See Defs. Am. Mot. for Summ. J. (Dkt. 20). Walsh's theory is that he did no such thing, and that Defendants gratuitously exercised unreasonable force against him. See Pl. Resp. to Am. Mot. for Summ. J. (Dkt. 23). At this point, it is unclear how Walsh's prior encounters would support or defeat these competing theories. Nonetheless, it is possible that the proofs at trial may justify the use of such evidence. Thus, the instant motion is premature.

Defendants also argue that this evidence is probative of Walsh's mental condition for purposes of calculating damages. See Defs. Reply at 2 (Dkt. 45). Given Walsh's willingness to concede his mental illness, and Defendants' failure to articulate how the police encounters could affect damages calculations, this justification for the motion fails as irrelevant or cumulative.

This motion is denied without prejudice.

SO ORDERED.

Dated: August 29, 2017  
Detroit, Michigan

s/Mark A. Goldsmith  
MARK A. GOLDSMITH  
United States District Judge

**CERTIFICATE OF SERVICE**

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on August 29, 2017.

s/Karri Sandusky  
Case Manager